66  671
70  205
65e 579

GEORGE F. CURRIE, PLAINTIFFF IN ERROR, v. ATLANTIC CITY ET AL., DEFENDANTS IN ERROR.

Argued June 24 and 25, 1901—Decided November 15, 1901.

1. Under the acts regulating the construction and maintenance of street railroads in this state, approved respectively May 16th, 1894, and April 21st, 1896, before the railway company can lay its tracks in the streets of a municipality, it must have the municipal consent and also the consent of a majority in lineal feet of the abutting owners.

2. Before the municipal permission can be obtained by the passage of an ordinance expressing its consent, there must be on file with the clerk of the municipal body the required consents of such majority in interest of the abutting owners.

3. When, upon the filing of the necessary consents of the abutting owners, the city council or other governing body has once regularly acted thereon by the passage and approval of a valid ordinance or resolution giving or refusing such municipal consent, the council or other governing body becomes *functus officio*, so far as the pending application is concerned, and the consents of the abutting owners thus acted upon cannot be the basis of further municipal action upon a second application.

On error to the Supreme Court.

For the plaintiff in error, *Robert E. Stephany.*

For the defendants in error, *Thompson & Cole.*

The opinion of the court was delivered by

HENDRICKSON, J.  This writ brings up for review the judgment of the Supreme Court, upon a *certiorari*, affirming the ordinance and proceedings of the common council of Atlantic City granting to the defendant company a location of the tracks of its railway on certain avenues of said city and the permission to construct, operate and maintain its street railway, by the electric trolley system, in and upon said avenues conformably to the route designated in said ordinance.

The opinion of the court will be found on *ante p.* 140, and since it embodies a statement of the facts necessary to an understanding of the legal controversy, I need not repeat them.

One of the grounds of attack upon the validity of the ordinance was that the consents of the abutting owners necessary to confer upon council the power to act had before been used as the basis of valid municipal action upon a like petition, and were therefore no longer effective for such a purpose.

The present petition was filed with the city clerk on September 11th, 1899, and the ordinance was passed, after a hearing, on October 2d, 1899.

It should be observed that, preceding this action and on January 28th, 1895, a similar application was made by the defendant company to the council for the like permission,

which was, by resolution, refused. It also appears that the application for such permission by the company was repeated on August 22d, 1898, and then the city council passed an ordinance granting the permission, provided the company would file its acceptance of the terms of the ordinance within thirty days, which the company failed to do.

Other admitted facts show that the same consents which were on file with the city clerk when the first application was made were used in connection with both of the subsequent applications to council; that some new consents were obtained after the first application, which were filed with the city clerk and used at the time of the second application, and that all these consents were, after the first application, withdrawn from the city clerk by the defendant company and refiled by it, along with the present petition, prior to the passage of the ordinance under review.

The contention of the defendant is, that since it appears that a majority of such abutting owners had once filed their consents with the city clerk, the filing thereof gave such a jurisdiction to the city council over the subject-matter that, once obtained, it could not be lost by lapse of time or by the council having once exercised its election by taking action thereon. And this is the ground taken by the learned justice in the opinion.

But we think that such a construction of the statute would not be in accord with the recognized rule that grants by municipalities of the privilege or right to use its streets are strictly construed against the grantee. 3 *Ell. R. R.* 1080.

The abutting owners are a part of the public, who have a special interest in the street, about whom the legislature has thrown its protection, and no street railway can be constructed thereon, under the acts in question, unless their consent, as well as the consent of the governing body of the municipality itself, is first procured in the way and manner pointed out by the statute. The consent of the governing body is to be obtained in the form of a permission, to be evidenced by an ordinance. The consent of the requisite proportion in lineal

feet of the abutting owners is to be obtained by consents executed and filed with the clerk of the municipality, thereby authorizing and empowering the governing body, as the agent of the abutting owners, as well as of the public at large, to grant the permission applied for, if, in their discretion, they conclude to do so.

This, we think, fairly delineates the legal quality of the consents required by these statutes. And the question is, can this consent of the abutting owner, or, in other words, this power thus conveyed to the municipal agent, after having been once made the basis of a valid municipal action, be again held and used in making a renewed application for the municipal permission? We think where the consents have been executed without any valuable consideration, as in this case, that both upon reason and authority this question should be answered in the negative.

The reasonableness of such a construction of the statute lies in the fact that, as a matter of common knowledge, the changes as to motive power, the number of tracks and as to conditions to be imposed upon the railroad company, all of which may be more or less prejudical to the abutting owners, are liable to be made in the consenting ordinance as originally proposed. Or it may happen, as in the present case, that, after obtaining the consents, an ordinance embodying conditions to be imposed in the interest of the abutting owners and the public might be duly enacted, but be refused acceptance by the company.

We think that when the consents are once filed with the petition giving council the required jurisdiction, and after a regular hearing the council acts thereon, by the passage of a valid ordinance or resolution, giving or refusing such municipal consent, the council becomes thereafter *functus officio,* so far as regards the subject-matter of the application. It necessarily follows that, in order to authorize council to act upon a new application of the company, the petition must be accompanied with the filing of new consents representing the required majority in interest of the abutting owners.

It may be observed, in passing, that the consents we have

been considering were, as it appears, recorded in the county clerk's office soon after they were obtained, but this was not a statutory requirement, and such recording can give to them no additional force or validity. We think that the logical result of the contrary doctrine, as contended for in this case, would be to hold that the consent of such owners, after being once acted upon, must continue to bind subsequent purchasers, and that sufficient consents, once filed, will confer jurisdiction for all time. Such a construction would be quite unreasonable and out of harmony with the rule of strict construction as against the grantee before alluded to.

The language of the act of 1896, which provides "that upon the date fixed by such notice, or upon such subsequent date as the hearing of the said matter may be adjourned to, the said governing body may, by ordinance, grant or, by resolution, refuse permission to construct," &c., indicates that the action of the body upon the matter is to be judicial in character and final.

Similar effect was given to the words of the Inn and Tavern act requiring that the "court shall, on the first day of said session, or on some other day thereof publicly fixed, determine in open court on said application by granting or refusing the same," and it was accordingly held that further action at a later day, allowing the matter to be opened and the application to be withdrawn, was not within the power of the court, and must be treated as a nullity. *Dilkes* v. *Pancoast.* 24 *Vroom* 553.

The act of April 3d, 1891 (*Pamph. L., p.* 317), provides "that the city council or other governing body of such city may, by resolution, * * * submit the question of the acceptance or rejection of this act to the voters of such city," &c.

This act was rejected by Cape May in 1891, but again submitted to vote in 1895, when, as claimed, it was accepted.

This act having been invoked by counsel of the city to justify a resolution of the council for the erection of a pavilion on the beach, Mr. Justice Collins, referring to this act, says: "We think the legislature did not authorize resubmission after rejecting."

In *Musser* v. *Fairmount, &c., Railway Co.,* 7 *Am. L. Reg.* (O. S.) 284, where a right to construct a street railway was made to depend upon the obtaining the consent of the city council, the latter body having once refused consent, it was held that its power, under the act, was exhausted, and that no subsequent ordinance giving consent could revive the privilege once nullified by the refusal.

The case of *Sanfleet* v. *City of Toledo,* 10 *Ohio C. C.* 460, is not opposed to the view here entertained, for while it was held in that case that consents not withdrawn might be counted for the railway at the time of obtaining a second ordinance, the holding was with the proviso, "the first ordinance being invalid."

The limit we have thus set to the exercise by the municipality of the power delegated to it by the legislature under these acts accords, we think, with the rule that while the construction of such acts is to be just and conformable to the legislative intent, yet any ambiguity or doubt as to the extent of the power is to be determined in favor of the state or general public. 1 *Dill. Mun. Corp.* 91.

Since the views already expressed would lead to the setting aside of the ordinance, it becomes unnecessary to consider the question as to whether the consent of an abutting owner, after being once filed, can be withdrawn or revoked before final action. Upon this and other questions raised upon the assignments of error we express no opinion.

My conclusion is that the judgment of the court below should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, DEPUE (CHIEF JUSTICE), VAN SYCKEL, GUMMERE, COLLINS, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES, VROOM.   11.